United States Court of Appeals,

Fifth Circuit.

No. 91–1707.

Vergie SWEARINGEN, Plaintiff–Appellant,

v.

OWENS–CORNING FIBERGLAS CORPORATION, Defendant–Appellee.

Aug. 19, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before GOLDBERG, DUHÉ, and BARKSDALE, Circuit Judges.

GOLDBERG, Circuit Judge:

Man must evolve for all human conflict a method which rejects revenge ... and retaliation.

Martin Luther King, Jr., Speech Accepting the Nobel Peace Prize (Dec. 11, 1964).

This is a retaliatory discharge case. The Texas legislature created a narrow exception to the Texas common law employment-at-will doctrine when it enacted article 8307c of the workers' compensation laws. Tex.Rev.Civ.Stat.Ann. art. 8307c, § 1 (Vernon Supp.1992). Unchanged since its passage in 1971, article 8307c protects employees who file workers' compensation claims, hire attorneys to represent them in workers' compensation claims, assist in filing workers' compensation claims or testify at hearings concerning workers' compensation claims from discrimination by employers. Article 8307c represents a method, in Dr. King's words, for rejecting retaliation by employers against employees claiming the benefits of the workers' compensation system in Texas.

In this appeal, we decide whether an employer that terminates an employee for an excessive absence from work pursuant to an absence control policy after the employee experienced a job-related injury violates article 8307c, the Texas retaliatory discharge statute. We decline to certify the issue involved in this appeal to the Texas Supreme Court. And, because the employee cannot prove that the employer terminated her for one of the four reasons prohibited by the statute, we affirm the district court's entry of judgment for the defendant employer.

## I. BACKGROUND

On February 28, 1986, Vergie Swearingen sustained a work-related injury while employed by Owens–Corning Fiberglas Corporation ("OCF") at its plant in Waxahachie, Texas. Swearingen then applied for and received workers' compensation benefits. Swearingen could not return to work for medical reasons for about four years.

As an employee of OCF, Swearingen belonged to the collective bargaining unit represented by the Glass, Pottery, Plastics and Allied Workers International Union ("Union"). The collective bargaining agreement between OCF and the Union contained an "absence control provision," which stated that "[a]n employee will lose seniority rights ... [i]f off work ... twenty-four consecutive months."[1] On September 26, 1988, the Personnel Manager at OCF wrote Swearingen a letter referencing the absence control provision and terminating Swearingen effective that day because her absence on medical leave exceeded twenty-four months. Swearingen attempted to return to work at OCF in the spring of 1990, after her physician released her to return to work with certain restrictions. Swearingen then discovered that, under the absence control provision of the collective bargaining agreement, she had lost her seniority rights and that OCF had terminated her employment.

---

[1] In full, section 13 of the contract between OCF and the Union provided that

> [a]n employee will lose seniority rights for the following reasons:
>
> (a) If the employee quits or is discharged.
>
> (b) If off work for more than twelve (12) consecutive months, exclusive of sickness, injury or permanent plant shutdown. In the case of sickness or injury, twenty-four (24) consecutive months. The Company and Union may grant extensions of the twenty-four (24) months.
>
> The Company will first endeavor to recall employees from cutback or layoff by personally contacting the employee. If this is not possible, the Company will send a registered letter to said employee at his last known address on file in the Personnel Department. If an employee fails to return to work within fourteen (14) calendar days after receipt of the Company's letter, he will be terminated. The Local Union will be given a copy of the above mentioned registered letter at the time it is sent to the employee.

Swearingen sued OCF, claiming that OCF retaliated against her for filing a workers' compensation claim in violation of article 8307c. Swearingen moved for partial summary judgment on the issue of liability, urging the district court to hold that 8307c "prohibits termination of an employee for excessive absence when that absence is a result of a work-related injury for which the employee has filed a workers' compensation claim." OCF argued that 8307c did not protect an employee terminated for violating "an absence control policy neutrally applicable to all employees." The district court found no Texas cases resolving the issue, looked to decisions interpreting similar retaliatory discharge statutes in other states and held that 8307c does not prohibit an employer from enforcing a "neutrally applied absence control policy" against a workers' compensation claimant. The court denied Swearingen's motion for summary judgment because significant issues of material fact remained: Whether OCF applied the absence control policy in a discriminatory manner and whether OCF retaliated against Swearingen within the meaning of 8307c.

Swearingen then moved for reconsideration of the court's order on her motion for partial summary judgment or, alternatively, entry of final judgment pursuant to the order. Swearingen urged the court to reconsider its interpretation of article 8307c, admitting that she had no evidence to "prove a discriminatory application of [OCF's absence control] policy against [her]." Alternatively, Swearingen asked the court to enter final judgment. The court denied the motion for rehearing and granted the motion for entry of final judgment, entering a take-nothing judgment against plaintiff Swearingen. Swearingen now appeals. She has filed a motion requesting this Court to certify the issue involved in this appeal to the Texas Supreme Court.

## II. ARTICLE 8307c

Summary judgment is appropriate only if no genuine issue exists over any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *see International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir.1991) (citation omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992). In reviewing a summary judgment decision,

the court of appeals employs this same standard used by the district court. Swearingen does not argue that any genuine issue of material fact precluded summary judgment, but, rather, that the district court erroneously interpreted article 8307c as justifying judgment for the defendant as a matter of law. This Court reviews " "de novo a district court's determination of state law' without deference to the district court." *Jones v. Roadway Express, Inc.,* 931 F.2d 1086, 1088 (5th Cir.1991) (denying petition for rehearing) (quoting *Salve Regina College v. Russell,* —— U.S. ——, ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991)). Our task in this appeal focuses on whether the undisputed facts entitled defendant OCF to judgment as a matter of law. We hold that the district court correctly applied the relevant state law, article 8307c, to the undisputed facts.

Article 8307c is a statutory exception to the Texas common law employment-at-will doctrine. *Thurman v. Sears, Roebuck & Co.,* 952 F.2d 128, 131 (5th Cir.1992) (citing *Winters v. Houston Chronicle Publishing Co.,* 795 S.W.2d 723, 724 n. 1 (Tex.1990)). The statute provides that

> [n]o person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent [her] in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.[2]

Tex.Rev.Civ.Stat.Ann. art. 8307c, § 1 (Vernon Supp.1992). Through article 8307c, the Texas legislature generally expressed " "the state's public policy of protecting its important interest in insuring that its work[ers'] compensation law can function to the benefit of its intended beneficiaries, employees, without coercion or unjust treatment from their employers as a result of exercising their rights under that law.'" *Roadway Express,* 931 F.2d at 1090 (quoting *Carnation Co. v. Borner,* 588 S.W.2d 814, 819 (Tex.Civ.App.—Houston [14th Dist.] 1979), *aff'd,* 610 S.W.2d 450 (Tex.1980)); *see Harris v. American Red Cross,* 752 F.Supp. 737, 739 (W.D.Tex.1990) (quoting *Carnation,* 610

---

[2]When the Texas legislature enacted the 1989 Texas Workers' Compensation Act, Tex.Rev.Civ.Stat.Ann. art. 8308–1.01–8309–1 (Vernon Supp.1992), the reference in section one of article 8307c to the Texas *Workmen's* Compensation Act remained unchanged. *Cf. Hodge v. BSB Inv., Inc.,* 783 S.W.2d 310, 312 n. 1 (Tex.App.—Dallas 1990, writ denied). In this opinion, we refer to the statutory scheme in place at the time of the events at issue here as "workers' compensation."

S.W.2d at 453).

The employee bears the initial burden of establishing a causal link between the "discharge and [the] claim for workers' compensation." *Roadway Express,* 931 F.2d at 1090 (citing *Hughes Tool Co. v. Richards,* 624 S.W.2d 598, 599 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982)); *Azar Nut Co. v. Caille,* 720 S.W.2d 685, 687 (Tex.App.—El Paso 1986), *aff'd,* 734 S.W.2d 667 (Tex.1987); *see* Tex.Rev.Civ.Stat.Ann. art. 8307c, § 2 (placing burden of proof on the employee). The employee only needs to prove that the workers' compensation claim represented a "determining factor" in the discharge, not that the employer discharged her *solely* because of the claim. *Roadway Express,* 931 F.2d at 1090 (citing *Azar Nut,* 720 S.W.2d at 687). Retaliation, then, only needs to be "*a* reason" for discharge to permit an employee to recover under 8307c. *Id.; Hunt v. Van Der Horst Corp.,* 711 S.W.2d 77, 79 (Tex.App.—Dallas 1986, no writ); *see also Santex, Inc. v. Cunningham,* 618 S.W.2d 557, 559 (Tex.Civ.App.—Waco 1981, no writ) ("even if there are other reasons," an employer cannot use the filing of a workers' compensation claim "as a reason to discharge or otherwise discriminate against an employee"). Once the employee establishes the causal link, "the employer must rebut [the alleged discrimination] by showing a legitimate reason for the discharge." *Roadway Express,* 931 F.2d at 1090 (citing *Hughes,* 624 S.W.2d at 599).

Appellant Swearingen argues that the district court erred in interpreting 8307c and urges this Court to construe the statute more broadly than did the district court. No Texas courts have confronted the issue we decide today. Swearingen argues that Texas courts generally give article 8307c a broad meaning. Moreover, Swearingen contends that the district court should have followed state court decisions holding that application of similar absence control policies violated the other states' retaliatory discharge statutes; these holdings parallel the Texas Attorney General's opinion of article 8307c and, to Swearingen, represent more persuasive authority than the state court decisions holding that similar absence control policies did not violate similar retaliatory discharge statutes.

Swearingen's first argument amounts to the contention that article 8307c is ambiguous. If the meaning of a statute " "is clear and unambiguous extrinsic aids and rules of construction are inappropriate ... and the statute should be given its common everyday meaning.' " *Stoker v. Furr's, Inc.,* 813 S.W.2d 719, 723 (Tex.App.—El Paso 1991, writ denied) (quoting *Cail v. Service Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983)). In article 8307c, the Texas legislature quite plainly protected workers' compensation beneficiaries from discharge for specific retaliatory motives. We acknowledge that the Texas courts "have encouraged a liberal construction of the Workers' Compensation Act so as to effectuate the Act's beneficent purposes." *Hodge,* 783 S.W.2d at 312 (citing *Ward v. Charter Oak Fire Ins. Co.,* 579 S.W.2d 909, 910 (Tex.1979)). But the issue we confront today merely requires us to divine whether OCF terminated Swearingen because she engaged in one of the activities beneficently protected in the retaliatory discharge statute—whether retaliation was among the reasons OCF discharged Swearingen. Moreover, we have consistently noted that the few exceptions to the Texas employment-at-will doctrine have been extremely narrow deviations. *See, e.g., Manning v. Upjohn Co.,* 862 F.2d 545, 547 n. 1 (5th Cir.1989) (recounting narrow exceptions to Texas employment-at-will doctrine created by the Texas Supreme Court and Texas legislature). We refuse to substitute Swearingen's expansive reading of the statute for the plain meaning of the confining language used by the Texas legislature in drafting this narrow exception to the at-will doctrine in Texas.

To escape summary judgment in favor of OCF, Swearingen must demonstrate the existence of evidence on each element essential to her case. *See Pope v. MCI Telecommunications Corp.,* 937 F.2d 258, 264–65 (5th Cir.1991) (noting that a complete failure of proof of an essential element renders all other facts immaterial), *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 1956, 118 L.Ed.2d 558 (1992). The district court concluded that OCF did not retaliate against Swearingen for one of the reasons listed in 8307c (filing a claim, hiring a lawyer, assisting in filing a claim or testifying at a proceeding), but that OCF terminated Swearingen because her absence exceeded the 24–month period permitted by the collective bargaining agreement. Our holding today is simple: Swearingen

cannot demonstrate the requisite causal link between her discharge and any of the four activities protected in article 8307c. Swearingen has offered no evidence that the filing of her claim constituted a "determining factor" in her discharge. *See id.* at 265 (citing *Benton v. Kroger Co.,* 640 F.Supp. 1317, 1321 (S.D.Tex.1986) (holding that the plaintiff failed to carry her burden of establishing a causal link)). No evidence shows that Swearingen's termination was motivated, even in part, by the filing of a workers' compensation claim. Swearingen "cannot hope to prove this link" between her termination and her claim for workers' compensation benefits, for she admitted that she has no evidence to do so. *American Red Cross,* 752 F.Supp. at 739. Instead, Swearingen conceded in her deposition testimony that OCF terminated her for one reason: violation of the absence control policy. Violation of a neutrally-applied absence control policy is not one of the circumstances safeguarded by article 8307c. Unless one of the four specific circumstances listed in article 8307c motivated the employer in discharging or discriminating against an employee, that employee cannot prevail in an action based on article 8307c. For this reason, we conclude that Swearingen's article 8307c claim of retaliatory discharge fails as a matter of law.

While we have scrutinized the cases interpreting other retaliatory discharge statutes in other states,[3] we stress that our decision today rests on the precise language crafted by the Texas

---

[3]*Compare Chiaia v. Pepperidge Farm, Inc.,* 24 Conn.App. 362, 588 A.2d 652, 654–55 (1991) (holding that discharge of an employee who was injured and collected workers' compensation benefits under a neutrally-applied absence control policy did not violate the Connecticut non-retaliation statute); *Metheney v. Sajar Plastics, Inc.,* 69 Ohio App.3d 428, 590 N.E.2d 1311, 1313–14 (1990) (holding that employer solely motivated by enforcement of a company attendance control policy did not violate the Ohio retaliatory discharge statute when the employer terminated an employee absent from work because of a compensated work-related injury); *Pierce v. Franklin Elec. Co.,* 737 P.2d 921, 923–25 (Okla.1987) (holding that discharge of employee solely for absence from work due to a compensated injury did not violate the Oklahoma retaliatory discharge statute; finding no guarantee of continued employment for injured workers); *Yoho v. Triangle PWC, Inc.,* 175 W.Va. 556, 336 S.E.2d 204, 210 (1985) (holding that the West Virginia non-retaliation statute did not apply because the discharge "was mandated by a facially neutral provision of a collective bargaining agreement"); *Galante v. Sandoz,* 192 N.J.Super. 403, 470 A.2d 45, 48 (Law Div.1983) ("expand[ing] the breadth of the [New Jersey non-retaliation] statute ... to preclude the neutral application of an absence control policy by an employer to an employee who was once injured in a work related accident is to confer upon the employee a benefit not contemplated by the legislature; namely, unlimited absences from work with impunity."), *aff'd,* 196 N.J.Super. 568, 483 A.2d 829 (App.Div.1984) *with Pilcher v. Board of County Comm'rs,* 14 Kan.App.2d 206, 787 P.2d 1204, 1210–11 (1990) ("In Kansas it is not only wrongful to fire an

legislature, not on the decisions of non-Texan state courts or other extra-statutory considerations. The Texas Attorney General did file an opinion in 1984 on an article 8307c issue similar to the one we consider in this appeal. Op.Tex.Att'y Gen. No. JM–227 (1984). The absence control policy evaluated in the opinion was "an across-the-board policy which terminat[ed] automatically any employee on leave without pay for more than six weeks," including employees on leave who collected workers' compensation benefits. *Id.* at 1. The Attorney General firmly concluded that "the [employer] is required to have a legitimate job-related reason, *other than a mere leave of absence,* before it may terminate an employee who is on leave because of a job related injury" and who has collected workers' compensation benefits. *Id.* (citing Texas cases interpreting article 8307c for the proposition that "an employee on a worker's compensation leave may be terminated only for reasons unrelated to the workers' compensation claim").

We regard the opinion of the Texas Attorney General as "highly persuasive," *Harris County Comm'rs Ct. v. Moore,* 420 U.S. 77, 87 n. 10, 95 S.Ct. 870, 877 n. 10, 43 L.Ed.2d 32 (1975) (citing *Jones v. Williams,* 121 Tex. 94, 98, 45 S.W.2d 130, 131 (1931)), and, as with any nonbinding authority, we have carefully considered the reasoning in the opinion. Even the Attorney General, with all his wisdom and sagacity, can be in error. We cannot condone his broad interpretation of article 8307c, a plainly-worded statute. As the Attorney General noted, Texas indeed "exercised its plenary legislative power to define public policy regarding the protection" of injured employees who file workers' compensation claims when it enacted article 8307c. Op.Tex.Att'y Gen. No. JM–227 at 1–2.

---

employee because he or she has filed a workers' compensation claim, it is equally wrongful to terminate an employee because of his or her absence due to a work related injury," predicated on a public policy exception to the employment-at-will doctrine articulated through the judiciary) (citing *Coleman v. Safeway Stores, Inc.,* 242 Kan. 804, 752 P.2d 645 (1988)); *Lindsay v. Great N. Paper Co.,* 532 A.2d 151, 153–54 (Me.1987) (holding that an employer who discharged a plaintiff pursuant to a neutrally-applied absence control policy because of employment absences caused by work-related injuries discriminated in violation of the Maine non-retaliation statute); *Judson Steel Corp. v. Workers' Compensation Appeals Bd.,* 22 Cal.3d 658, 150 Cal.Rptr. 250, 255, 586 P.2d 564, 569 (1978) (holding that an employee's termination for work-related-injury-absence exceeding the time allowed by a collective bargaining agreement violated the California non-retaliation statute, which "declare[d] a general policy in favor of preventing *all* discrimination against injured employees").

The decisional talisman in this case remains the language of article 8307c. As expressed in the statute, the termination of an employee whose absence exceeds that allowed under an absence control policy and who has filed a workers' compensation claim violates Texas public policy *only* if motivated by one of the circumstances enunciated in article 8307c. The presence of an illegitimate, retaliatory motive would infect an otherwise proper discharge in violation of article 8307c. No prohibited retaliatory motive tainted this termination.

## III. CERTIFICATION

No intermediate appellate or Texas Supreme Court decisions exist on this issue of state law. Texas Rule of Appellate Procedure 114(a) states that a question of state law can be certified to the Supreme Court of Texas if " "it appears to the certifying court that there is no controlling precedent in the decisions of the Supreme Court of Texas.' " *Lucas v. United States,* 807 F.2d 414, 418 (5th Cir.1986) (quoting Tex.R.App.P. 114(a)). "Certification to State Supreme Courts is a valuable resource of this court," however, "so we dare not abuse it by over use lest we wear out our welcome." *Transcontinental Gas Pipeline Corp. v. Transportation Ins. Co.,* 958 F.2d 622, 623 (5th Cir.1992). Certification does not constitute "a panacea for resolution of those complex or difficult state law questions which have not been answered by the highest court of the state." *Id.* Indeed, under the plain language of article 8307c, our decisional analysis is relatively straightforward. We deny Appellant Swearingen's motion to certify the question we decide today to the Texas Supreme Court and, instead, "in the absence of explicit guidance from the state courts [we] attempt to predict state law." *American Waste & Pollution Control Co. v. Browning–Ferris, Inc.,* 949 F.2d 1384, 1386 (5th Cir.1991) (citations omitted).

## IV. CONCLUSION

> Revenge is a kind of wild justice, which the more man's nature runs to, the more ought law to weed it out.

Francis Bacon, *Of Revenge, in* Essays (1625).

The Texas legislature methodically weeded certain prolific retaliatory actions out of the employment landscape with the article 8307c hoe. Our license to root about in the employment-at-will garden extends only to the bounds marked by the Texas legislature with article 8307c. We cannot protect employees from every plant growing in the garden—only the four weeded out by the Texas legislature in article 8307c. Since Appellant Swearingen cannot tie her termination to one of those noxious motivational weeds, we AFFIRM the judgment of the district court entering judgment for Appellee OCF as a matter of law.